The last case on today's calendar, that's Brutus Trading versus the United States. Thank you. I guess it's really Standard Chartered is the defense, but the United States is the third party. Mr. Sing car. Yep. Am I saying that right? You're one of the few who gets that right the first shot. So really, it's pretty straightforward. It looks else would you do it? Tell you it's been butchered by by brilliant people. I tell you so. I'm James.  Sing car. That's why he got it right. Yes, exactly. Exactly. Excuse me. Which gives me hope about your ultimate resolution of this case. But, you know, anyway, I'll look anywhere for let me just state. You've got 10 minutes, but you've reserved to three minutes for Obama. Yes, sir. So go ahead. Okay. May it please the court. And actually, good afternoon. We appeal the district court's order granting the government's motion to dismiss our case under the False Claims Act. And we've raised a number of different points in our briefs. I'm not going to go over them here. They, I believe, merit your consideration. But I'm going to address two points. But I would like to start by anticipating a question that I think you're going to ask me in light of your exchange earlier. And that is pending in the United States Supreme Court is U.S. Exwell Polanski versus Executive Health Resources. It was argued about a month ago. And the question is whether this court should hold your decision pending Polanski. And I must reluctantly say yes. And the reason is this. The main argument that the Polanski petitioner advances there is that the government does not have the power to make a motion to dismiss once it has declined to intervene in a False Claims Act case. So it's quite a fundamental proposition. We have not made that argument here. But if the Supreme Court accepts that argument, depending how they write that, and they say the government never had the authority to do what it has done here, that obviously affects these proceedings. So you can't get around that. Well, what you're saying is that you would make a different argument in light of the 9th Circuit? Well, it depends what the court says. Well, that may be. But, I mean, you've made an argument which is saying we should follow the 9th Circuit rule, right, in essence? Yes. But that's different, Your Honor. If the U.S. doesn't have authority later, that's the end of it. Yeah, the 9th Circuit doesn't matter. They are saying that once the government has considered the case and declined to intervene, it no longer has the power to seek a dismissal of the relator's case. That's the argument that the Supreme Court commanded cert on. And so that's a pretty fundamental argument in the world of False Claims Act cases. And so it would have significant impact here. If the court agreed with the petitioner, we would certainly be saying something about that in this case, even though we have not made that argument here. You're saying it's not a waivable point, is that what you're saying? I believe that would be the case. But, again, it depends how the Supreme Court phrases what they say. Well, this one, I mean, unlike the other one, this one we'll certainly know by June probably, right? Oh, yes, exactly. Yeah, so, I mean, in the world of court decision-making, that's not necessarily a long time. This is the Second Circuit. Come on. Well, I try cases in the rocket docket, Your Honor, so that's a little bit different in Virginia. But part of this case has been going on for a really long time, too. Right, and there's that question, and then assuming that the United States can move to dismiss, then there's the standard question, the question of what standard to apply, and that clearly affects, unless we could say under any standard. Correct, and in Polanski, the government has run its unfettered discretion argument, and the Polanski petitioners have embraced Sequoia, and they frame it, I think, in a pretty commonsensical way, which it's like an APA standard, it's arbitrary, irrational. Was the decision to dismiss arbitrary or irrational? And I think that's a good rule of thumb. That's what we would certainly embrace here. But the two issues that I'd like to address, first of all, is that we contend that under the False Claims Act and procedural due process, the district court erred in failing to hold an evidentiary hearing to adjudicate the government's motion. The particular record here, which involved sharply conflicting evidence and testimony from us, challenging the record that they put forward in the court, and indeed the district court's opinion is striking in that it talks about all of the government's declarations and so forth, it mentions we filed some, but in coming to the conclusion that, oh, this is just a subjective disagreement, the court never examines or articulates what in our evidence suggests that that's the case. There are many False Claims Act cases where a petitioner will say, ah, you lazy bums, you just didn't do a good job. We are so far removed from that, and I think our briefs and the record detail very specifically in terms of the government's contentions that we didn't provide certain information and so they couldn't make that judgment. And it's really quite striking. And I'll give you a couple examples just for purposes here, but we detail these in our briefs. First of all, the government contends that the district court concluded that the government had a valid purpose to terminate this case early because our factual allegations were meritless. So that's how you get into this whole thing. And what we put in the record was a challenge to that factual characterization. So, for example, the government's decision is based on a fraction of the evidence we produced. One of the people involved in this, who's named in the brief, Mr. Chandra, produced 20,000 records in September of 2013 showing illegal transactions, illegal counterparties, and most importantly within that, and this is discussed a bit in our briefs, is a document called the Juniper 35 list. And what that was, was that was an internal study done by Standard Chartered of these transactions. It was looking at what they did. So Juniper 35 is rich with illegal transactions, illegal counterparties, and so forth. So that 20,000 records came in in September 2013, but the government said it shut down its investigation in August of 2013. And it didn't let us know. And indeed, Mr. Chandra, who got these records at some personal physical risk, they had asked him to get this stuff. And he kept doing it. Now, I know that in the record the government says, oh, we looked at these 20,000 records. Well, outside of the implausibility of that, just in terms of the time frames involved, as I say, with Juniper 35 in there, you cannot have reviewed those records and say, ho-hum, we didn't provide information like that. But there's things that are even simpler. The government — But is this an argument, then, that the government's decision is fraudulent, arbitrary, or capricious? Their decision to move — It's arbitrary and irrational, because their investigation was utterly arbitrary and irrational. It was closed off, and they contend that their investigation was thorough. But it was thorough because they didn't consider, they say, that we didn't produce all this evidence that we say we did. And in that context, and again, the merits of this dispute are not here. It is simply that in the face of that — And we don't believe that the hearing required on a government motion to dismiss in the False Claims Act is required for every case. But in the particular situation here, and even the hearing — Excuse me. Even the hearing that we're asking for is modest. But the court had this information. You're just saying that you felt that the district court's order didn't reflect that it had carefully considered the written submission. No. No, Your Honor. And thank you for asking that question, because I want to be really clear about this. Essentially, because of the detail of what we put in — But again, you're saying what you put in, so you gave it to the district court. Yeah, but the point is, Your Honor, is that the credibility of these witnesses are absolutely essential. You can't just on the paper record — I mean, you know, we quoted in our brief Judge Frank and other luminaries from this circuit, that you just can't resolve lots of things on affidavits. And so what we contend is that we should have had the ability to cross-examine, and the government cross-examined our folks, and that could be done in a range of different ways. We're not asking for a full trial. We could have depositions. And then from that, once credibility was tested with cross-examination, then there would be a record that the court could do exactly what Your Honor is suggesting, but not here. But the second related part here is that the court in a bit stacked the record. I don't want to be too edgy about it, but we wanted to put in the testimony of Mr. Daniel Alter. Mr. Alter was the former general counsel of the New York Department of Financial Services. If you recall, this case originated when news that the government investigators, both New York and the feds, were resolving a sanctions matter with Standard Chartered. Our clients, who created Brutus Trading, knew that what was going on was far worse than what the government was agreeing to. They got nowhere initially with the federal investigators, but Mr. Alter basically had one of those oh-you-know-what moments and started launching a much more vigorous investigation and so forth. So what we asked the court, we said, look, and we provided a very detailed offer of proof. It said joint appendix, I'm sorry, 442, articulating what Mr. Alter could say. And he, as the lead investigator for New York, would articulate the value of what our clients put in that directly contradicts what these other investigators say. So we asked the court, look, the government's putting in all these affidavits, and this goes back to this credibility point, Your Honor, too. We should be allowed to at least depose Mr. Alter, and we needed a subpoena to do that, and the court denied that. So it's both the fact that the competing views of the evidence require cross-examination, require that testing and credibility testing of these witnesses. But your assertion is that the government was lying when it said the things it said in its submissions? I mean, even under the Ninth Circuit test, right, then at least for that test, the government has to at least articulate some reasons and a relationship between the reasons and the dismissal. And then the burden shifts to you, the relator, to basically say, well, those reasons are arbitrary, capricious, illegal, or fraudulent. So you're not saying fraudulent, right? Well, I don't know what was in the mind of these folks, but they were certainly wrong. But, Your Honor, your analysis, we are up at the first level. Remember, the district court's ruling, it said that there was a valid government purpose here, and what that purpose was, according to the district court, was early termination of a case, quote, as to which the government has determined that the factual allegations were meritless. That, by the way, is at Joint Appendix 777 and 778. So the factual allegations being meritless is the key conclusion of the government that creates this valid government purpose. We're hearing on that before you even get to the second prong of the sequoia. Right. But our point is that the evidence challenges the government's determination that our factual allegations were meritless, because that's what drove the justification for termination. And that's the reasoning that the district court followed. But I would say, wherever you do it, the point is, is that the end result, dismissal of the case, was arbitrary and irrational, given the evidence that we put in, and it really required resolution by this very modest evidentiary hearing. So we're way over, but I do want to ask one other question. If we take your advice and wait for the Supreme Court in Polanski, and they come back and adopt some variation on the D.C. Circuit Test, which is basically the government is on federal discretion to do this, that would, I guess, resolve part of your appeal, but you still would argue the procedural error of a lack of a hearing? It kind of depends on how it's written. I understand that. Yes, I would. And, Your Honor, I know I've gone over, but maybe in my rebuttal I will address the whole unfettered point, because I don't think that's what's going to happen for a range of different reasons. But the answer to your question is, I think, yes, if I understand your question. All right. Thank you. We'll now hear from your adversary. That's what I do with a sheet. I lost my sheet. Mr. Barnea. Mr. Barnea. Sorry about that. Mr. Barnea, did we go to law school together? We did, indeed. Nice to see you. It's been a long time. Nice to see you, too. It has been a long time.  In this case, the government found no evidence supporting the relators' allegations, concluded they were based on an invalid legal theory, and determined that permitting further litigation would waste government resources. The government thus moves to dismiss the relators' complaint under 3730C2A. So the invalid legal theory is not one that the district court really got to, right? The district court found that the dubiousness of the legal theory and the novelty itself justified the government's decision, and so it didn't even need to get to the actual invalidity of the legal theory. Its very dubiousness was itself a proper justification, which would be a perfectly acceptable basis for this court to affirm its decision. Perhaps I could start just by talking about Polanski, since that seems to be the elephant in the room. The government, you know, there doesn't seem to be any likely outcome of Polanski that would change the outcome here in terms of that would cause this question. It's a likely outcome, but there's one of the questions they're taking is whether the government can move at this stage. If the answer to that is no, and I don't disagree that's unlikely, but who knows. If the answer to that is no, then what? Well, actually, I think even in that case the government can prevail here, because what happened in Polanski is the government declined. The case went through litigation for months, if not years, and then, I believe it was the eve of trial or very late in litigation, the government then sought to intervene and to move to dismiss. That was hotly contested between the parties as to whether that was appropriate, why the government had waited so long. There's a very long record about that, and, you know, in that circumstance there could be some, courts could come to different views as to whether the government waited too long to intervene to exercise its right. In this case, the government declined to intervene and immediately moved to dismiss. That was according to how we've always done it. In the Third Circuit in Polanski, in the Seventh Circuit, in a case that I cannot pronounce but starts with C-I-M-Z and has many other letters after it, what the courts of appeals did in those cases was they said, well, we understand that in these cases the government did not separately move to intervene before it moved to dismiss, but we will construe the motion to dismiss as including a motion intervened for the limited purposes of moving to dismiss. And, in fact, in our brief we said the same thing to this Court, that, you know, this would just be a procedural nicety. If the law had been clear, for example, however many years ago, that what the government must do in order to move to dismiss is to intervene, then we would have simply filed a notice that has two different words. Instead of we moved to decline to intervene and then move to dismiss, we would have simply said move to intervene for the limited purposes of moving to dismiss, and everything would have proceeded from that point. So it does not strike me as an outcome that I can conceive. So just technically, if that's the resolution, then now we construe the motion to dismiss as including a motion to intervene? That is what the Third Circuit and the Seventh Circuit did in both of those cases. In neither of those cases did the government move to intervene. And so, and again, absent a lengthy delay between those things to fault the government on, you know, a procedural hiccup based on an after-the-fact ruling would seem sort of out of proportion to any possible outcome. It was a criminal context all the time, the Supreme Court. I mean, so, and usually their statutes and limitations have run based on new rules. Anyway, but so you're saying we should or shouldn't wait for Polanski? I don't, at this point, given that it's already been argued and will be decided this spring, I don't see any reason why you wouldn't wait. It will in all likelihood settle this, it will certainly settle this question of intervention, and it will all likelihood set a standard for this court to use in reviewing the motion to dismiss, rather than this court having to engage in the, if we have to use the Ninth Circuit, you know, we affirm for this reason, but if it's the D.C. Circuit or the Third Circuit standard. So I think it would simplify matters. There's no reason in my mind not to wait. I just don't view it as outcome determinative. I think it's just more for ease of drafting the opinion. Okay. So I'd like to talk about a few of the things that my adversary pointed out in his argument. First, I think it's important to talk about the notion of a hearing. First of all, which I want to be clear, whether the district court held a hearing here as a matter of this court would review for abuse of discretion only. That was made clear in the Abbey Summary Order and other places. The notion of whether a hearing is appropriate. First of all, several courts have pointed out that hearings in these cases are extraordinarily rare and must be, you know, justified by an extraordinary submission by the relator. But the hearing must be tied to the standard of review. So if the standard of review is, even in the Ninth Circuit, that the government acted in a constitutionally arbitrary way or unconstitutionally or infraudulently, then the only thing that should trigger a hearing is evidence of something like that, a significant showing of something like that that the court would then have to resolve in a hearing. There is no basis for a hearing on simply the question of, did the government do a good job in its investigation in the relator's view? Or does the rules... And so is it not one of degrees? It's not that they didn't do a good job. It's that they didn't do a good job to the point where it is an arbitrary and capricious decision. Well, again, I don't think the... There are several courts, and we cite them in our opinion, that cite the adequacy of the government's investigation in the relator's view as simply not being relevant to any of these standards. This is not about... So no investigation would not be susceptible to an allegation of arbitrary and capriciousness? Again, this is not arbitrary and capriciousness. This is not APA review. This is review even under the Ninth Circuit standard for whether... I'm talking about the Ninth Circuit standard, right? Right. The Ninth Circuit standard is not APA review to disagree with my adversary. The Ninth Circuit standard, if you read the Sequoia case carefully, talks about essentially the government acting fraudulently or arbitrary in a way that violates substantive due process so that the government acted in such an egregious way as to, you know, violate the very role that it is supposed to take in a false claims act investigation or in moving to dismiss for an improper purpose. This is not, you know, did the agency, you know, consider all of the factors before issuing its regulation type APA review whatsoever. And we cite several cases, including the Sequoia decision itself from the Ninth Circuit, that makes clear that it refers to the substantive due process standard from the Supreme Court in looking for exactly that. This is not let's all re-review the government's investigation and decide, you know, in a court of appeals whether the government's investigation was thorough enough or not. But what if it was nonexistent? Would that meet the standard for due process? It sort of depends on the issue. So the government in some cases may not investigate a false claims act case at all factually. So if, for example, a false claims complaint filed by a relator came in that was plainly on its face legally deficient, the government may say we're not devoting any AUSA's time to investigate the factual allegations here because even if they were true, the legal basis isn't there to allege a false claims act. Our office does that sometimes. There may be other reasons why. Let me just interrupt. So then would the district court be free to consider the merits of that legal conclusion? The district court can consider the good faith basis put forth by the government for why it, under the Sequoia standard, the good faith basis put forth by the government as to why it moved to dismiss a particular case. In some cases, as in this case it may be, we've investigated the relator's claim and found them to be without merit as well as others. In other cases, there may be other reasons why the government moved to dismiss. And so, yes, if there was an allegation that the government lied, that the agent committed perjury when he said we investigated these allegations when in fact he had not, you know, he said we interviewed the relator when in fact he did not interview the relator, perhaps that could amount to some kind of fraud on the court that would, I'm not sure what. You're saying that if the government just says we declined, we looked into it, we think it's meritless, then unless, this is under the Ninth Circuit standard, unless the relator can come up with something to say that's a lie, that whatever statement was just put in the declaration under penalty of perjury is false, then you don't get a hearing. Yes, because even in the most kind of, I don't know what to call it, liberal Ninth Circuit standard, it's really an inquiry into the government's good faith in moving to dismiss. These are the government's claims. These are claims of fraud against the government. The government has broad discretion in deciding whether to pursue them, to not pursue them, to dismiss them, or do whatever it wants with them. And the only question in judicial review, even in the Ninth Circuit review, is is the government exercising that authority, that very broad authority that it has to control its claims of fraud against it in bad faith. So unless there is some compelling reason to believe that the government acted in bad faith and some substantial showing by the relator that there was bad faith that would require some kind of evidentiary hearing to get to the bottom of, the role of the district court in reviewing these motions is extremely circumscribed, and rightly so because of the nature of the claim and the very sweeping power that is granted to the government in this provision. Furthermore, just, I see my time is up, but just to finish the thought, again, the government did not only rely on the comprehensiveness of its investigation to justify this dismissal. It also pointed to the legal inadequacy, which the district court didn't even feel the need to reach, but it is still there. In addition to its dubiousness, it is actually legal wrong. And furthermore, the government pointed out to the substantial use of government resources that would be entailed in this litigation, which itself many courts have routinely upheld as a justification for a government motion to dismiss. So we have three valid reasons here, and the fact that the relator feels that the investigation did not come out to his liking or that the relator does not understand or believes that the government came to the wrong conclusion in assessing the evidence that the relator presented to the government doesn't even come close to meeting the standard on one of those, let alone on the other two. So for all of those reasons, unless the court have any questions, we believe this court should affirm the district court's judgment. Thank you, Mr. Burnett. We'll now hear from Mr. Sinkar for three minutes of his opening. Much of my colleague from the U.S. Attorney's Office's argument focuses on trying to portray this case as something that it's not. This has nothing to do with us having an investigation that was not to our liking, but it also doesn't involve substantive due process. So the procedural issue here is a procedural due process one, and so his point about this high level to deal with substantive due process, this is in the briefs, but I want to clarify that. But two fundamental points I think I'd like to make, and going back to your question to me earlier, yes, the government agents lied. They lied in several different ways, and we articulate those in our briefs. Did you accuse them of lying in the district court? Yes. You accused them of lying. Let me tell you what they did, and then you, you know. Show me where you accused them of lying. Contradicting them is not the same as lying. Well, and then let me tell you what the facts are, and then if you would prefer to call it contradiction, but I still think it goes to the point of whether their judgment that our case was meritless was arbitrary or rational. One example of that concerns the spreadsheets that we produced from Standard Chartered with a lot of transactions. Now, the evil people at Standard Chartered hid much of the information behind hidden cells in those spreadsheets, and I'm not a techie by any stretch of the imagination, but you had to know how to open it to get to it. The government says that they never saw any hidden cells and we never told them anything about it. Yet in the record is a detailed memorandum from Relators Council, Mr. Koenigsberg, taking step by step through how you open those hidden cells. And that particular letter was from January 9th, 2019. Well, this actually was a whole range of other things that he articulated. It's a Joint Appendix 753 of information that we provided to the government that the government agents had denied that we did. And there's a list in there. I mean, it's a lot of detailed information, which is why it is so different from the just we don't like this investigation case. I've never seen a case like this before in the false claims world. With the detailed evidence that we've put in, all we want is an evidentiary hearing to test the credibility of these people. The second thing, though, that I have to say is that the government's argument is woven through with this notion of very broad authority in this context. That is legally incorrect. They don't have very broad authority in the context of this case. The relator has a property interest in the cause of action and is equally a party in interest here. And the government, the False Claims Act was enacted in 1863. From 1863 to 1943, once the relator launched a case, no one could mess with that case. The government had no right to intervene or whatever. And in 1943, Congress changed the law slightly to allow the government to take over a case, and then in 1986 to allow the government to intervene after it had declined and so forth. But so the whole concept and the constitutional underpinnings of why the False Claims Act works and separation of powers and all that, it doesn't start with the notion that the government has some unique authority here. But related to that, though, is the congressional purpose of having relators wasn't just to deputize citizen, to broaden the arm of law enforcement, to protect the government from fraud. That was clearly one of the main ones. But another congressional purpose, and we've quoted this in our brief, and it's from the Senate report that we've quoted, that this Court has quoted in other cases, which is 99-345, page 26. And there it says that the relator is to, quote, act as a check that the government does not neglect evidence, cause undue delay, or drop the false claims case without a legitimate reason, close quote. So I would respectfully submit, and the Court has been so kind with the time, that the notion, it's the opposite of very broad authority here. It's not that the government doesn't have legitimate interests, but so does the relator, and the relator has been deputized by Congress to do certain things, including hold the government accountable when it wants to ditch a False Claims Act case. But it sounds, again, like Polanski may provide a lot of clarity as to how broad or narrow the governance is. Well, knock on wood, I hope so, Your Honor. Okay. We will reserve decision. Thank you all very much. That concludes the arguments for today's calendar. Let me thank our Corporate Deputy, Ms. Beard, who is asked to now adjourn the Court. Court is adjourned. Thank you.